UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

                           Plaintiff,

           -against-

RUDY GOMEZ,

                        Defendant.

**MEMORANDUM & ORDER**
**18-CR-214 (NGG) (SJB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court are Rudy Gomez's *pro se* Motion for Appointment of Counsel (Dkt. 103) and *pro se* Motion for Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. 104). For the reasons that follow, both motions are DENIED.

## I.  BACKGROUND

On June 27, 2019, Gomez[1] pleaded guilty to one count of a multi-count indictment, which charged Conspiracy to Possess Heroin and Cocaine with Intent to Distribute, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(i) and 841(b)(1)(A)(ii)(II). (*See* June 27, 2019 Minute Entry (Dkt. 29); *see also* Redacted Superseding Indictment (Dkt. 6).) This conviction followed a federal investigation into a Dominican-Republic based drug trafficking organization run by Gomez's uncle and co-defendant Sergio Gomez, which supplied narcotics to a similar organization located in Springfield, Massachusetts. (Presentence Investigation Report ("PSR") (Dkt. 40) ¶ 3.) The investigation culminated in searches of premises related to Gomez where the police recovered approximately 8.25 kilograms of heroin and various suspected tools and proceeds of drug trafficking. (*Id.* ¶ 8.) In a

---

[1] Rudy Gomez and his co-defendant Sergio Gomez share a last name; for clarity, any reference herein to "Gomez" will only refer to Rudy Gomez. Sergio Gomez will be referred to by his full name.

subsequent voluntary interview, Gomez admitted to selling heroin over a period of years (ultimately stipulating to responsibility for almost 24 kilograms) and travelling to Mexico to negotiate heroin purchases. (*Id.* ¶¶ 9-11.)

The plea agreement entered into by Gomez and the Government recommended a guidelines calculation of 151 to 188 months' imprisonment. (Change of Plea Hearing Tr. (Dkt. 30) at 25.) Gomez agreed not to appeal a sentence of 210 months' imprisonment or less. (*Id.* at 21.) He was also eligible for relief pursuant to Section 402 of the First Step Act, under which the court could disregard the statutory minimum of 10 years' imprisonment. (PSR ¶¶ 69-70.) On December 2, 2021, the court sentenced Gomez to 151 months, the bottom end of the guidelines range calculated in the PSR. (*Id.*; Dec. 2, 2021 Minute Entry.)

Before his sentencing, Gomez filed two motions—one on May 14, 2020, and the other on February 19, 2021—seeking release pending sentencing due to the ongoing COVID-19 pandemic. (*See* Mot. for Bond (Dkt. 57); Emergency Mot. for Bond and Release from Custody (Dkt. 78).) Gomez argued in both that he faced increased risk of contracting and suffering severe consequences from COVID-19 due to chronic asthma and hypertension, and also mentioned in the second motion that he had contracted COVID-19 while incarcerated. (*See* Mot. for Bond; Emergency Mot. for Bond and Release from Custody.) Both motions were denied. (May 19, 2020 Minute Entry (Dkt. 61); Mar. 26, 2021 Report and Recommendation; June 4, 2021 Text Order (denying motion for reconsideration).)

On August 3, 2022, Gomez requested that the court appoint counsel and filed the instant Motion to Reduce Sentence (the "Motion"). (*See* Dkts. 103, 104.) On October 7, 2022, the Government field an opposition to the motion. (Response in Opp. ("Opp.") (Dkt. 106).) On November 21, 2022, Gomez filed a reply. (Reply (Dkt. 109).) On February 16, 2023, Gomez filed a

supplement, raising an additional argument that he was mistakenly sentenced without consideration of the "safety valve" provision of 18 U.S.C. § 3553(f). (Supplemental Motion (Dkt. 111).)

## II.  LEGAL STANDARD

A defendant may move for a reduced sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). A "defendant's failure to exhaust administrative remedies is a 'threshold matter' preventing the Court from considering a Section 3582 application." *United States v. Alvarez*, No. 89-CR-229 (JS), 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020);[2] *see also United States v. Napout*, No. 15-CR-252 (PKC), 2020 WL 1872455, at *1 (E.D.N.Y. Apr. 14, 2020).

A court may grant such a motion only if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In reviewing compassionate release motions, district courts are free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them" and are not bound by Sentencing Guideline § 1B1.13 or its application notes. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). The only statutory limit placed on what qualifies as extraordinary and compelling is that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Brooker*, 976 F.3d at 237-38.

---

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

## III. ARGUMENT

### A. Compassionate Release

#### 1. Exhaustion

Gomez exhausted his administrative remedies by filing a request for release with the Bureau of Prisons, which he asserts went un-answered. (*See* Ex. C to Mot. (Dkt. 104-1) at ECF 19; Mot. at 18.) The Government does not contest this fact. (Opp. at 4 n.4.) Accordingly, the court can evaluate the merits of the Motion.

#### 2. Extraordinary and Compelling Reasons

Gomez argues that extraordinary and compelling reasons for a reduced sentence exist because his asthma, hypertension, and heart palpitations[3] place him at a heightened risk for complications resulting from COVID-19; because he has contracted long COVID following a COVID infection during his confinement; and because of the severe conditions of confinement during the COVID-19 pandemic. (Mot. at 3-13.) The Government argues that Gomez's medical records show his medical conditions are under control with treatment, his risk from COVID-19 is mitigated by the COVID-19 vaccine, which he received, and he is not at high risk from COVID-19, as illustrated by his recovery from his asymptomatic infection. (Opp. at 5-6.)

The court acknowledges that Gomez's conditions heighten his risk from COVID-19. The CDC lists both asthma and hypertension

---

[3] Gomez also claims that he is suffering from "long-COVID," *i.e.*, the continuation or increased intensity of COVID-19 symptoms long after recovering from an infection. (Mot. at 3.) The court disregards this condition, because—as noted by the Government—Gomez relies on medical records pre-dating his February 2021 COVID-19 infection to establish his symptoms for long-COVID; more recent records show no such symptoms. (*See* Ex. A to Mot (Dkt. 104-1) at ECF 2-15; Mot. 3-4; Ex. A to Opp. (Dkt. 106-1) at 14-15.) As Gomez could not have contracted long-COVID prior to his COVID-19 infection, this condition is unsupported by the record.

as conditions which may "make you more likely to get very sick from COVID-19." *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 10, 2023). Nonetheless, courts within this circuit have declined compassionate release motions premised on similar health conditions for a variety of reasons. *See, e.g.*, *United States v. Bradley*, No. 19-CR-632, 2023 WL 3004660, at 2 (S.D.N.Y. Apr. 19, 2023) (addressing hypertension, among other conditions); *United States v. Wofford*, No. 19-CR-6061 (EAW), __ F. Supp. 3d __, 2022 WL 9583714, at *1 (W.D.N.Y. Oct. 17, 2022) (asthma and hypertension); *United States v. Golfo*, No. 19-CR-95-3 (KAM), 2022 WL 6162424, at *2 (E.D.N.Y. Oct. 6, 2022) (asthma). This court will do the same here.

*First*, Gomez's medical records show his conditions are well controlled and treated during his incarceration, mitigating the risk from COVID-19. His asthma is treated with an inhaler and recent checkups have not showed any ongoing breathing issues. (Ex. A to Opp. at 1-3, 7, 34, 43.) His hypertension was diagnosed by the prison medical examiner, (Ex. A to Mot. at ECF 11), and is actively treated with medication and monitored through blood pressure checks. (Ex. A to Opp. at 1, 22-23.) His reports of heart palpitations have been reviewed on several occasions as well. (*Id.* at 1-3, 96.)

*Second*, Gomez is fully vaccinated against COVID-19, (Mot. at 10), providing additional protection against contracting and suffering serious consequences from the virus. Courts have considered vaccination status relevant in denying motions for compassionate release, as vaccines are effective in limiting the risk presented by COVID-19 to inmates. *United States v. Patel*, No. 21-CR-1746, 2022 WL 1634454, at *2 (2d Cir. May 24, 2022) ("[B]ecause Patel has now been vaccinated, any risk of severe illness from COVID-19 has been substantially decreased.");

*United States v. Young*, No. 18-CR-834-06 (PAE), 2023 WL 2945800, at *3 (S.D.N.Y. Apr. 14, 2023) ("Young has not adduced evidence that, with the benefit of such vaccinations (and ensuing booster shots), his underlying medical conditions present a sufficiently grave risk from COVID-19 to make his medical circumstances extraordinary and compelling.") (collecting cases).[4]

*Third*, Gomez himself already tested positive for COVID-19 and recovered without issue. (*See* Opp. to Emergency Mot. for Bond and Release from Custody (Dkt. 80) at 6.) In fact, his case was asymptomatic and closely monitored until he tested negative. (*Id.*) Although all medical cases are different, Gomez's thus-far safe experience with COVID-19 provides some additional comfort that he is not at significant risk for serious health complications. *United States v. Delorbe-Luna*, No. 18-CR-384 (VEC), 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020) ("As several courts have found, a defendant's successful recovery from

---

[4] The court does not wish to disincentivize inmates from receiving the COVID-19 vaccines, and in that spirit notes that courts have also considered a defendant's *refusal* to get vaccinated in denying motions for compassionate release, as the defendant's unwillingness to mitigate health risks weighs against a finding of "extraordinary and compelling reasons" for release. *See, e.g., United States v. Folkes*, No. 18-CR-257 (KAM), 2022 WL 1469387, at *6 (E.D.N.Y. May 10, 2022) ("Courts have nearly uniformly denied compassionate release to defendants who . . . were offered yet refused the vaccine.") (collecting cases). These decisions reflect the positive developments in combatting the COVID-19 pandemic presented by the vaccines, which have generally decreased the risk of COVID-19 infections and severe consequences therefrom both within the prison system and without. *See New Study Shows Fewer People Die from COVID-19 in Better Vaccinated Communities*, BMJ, https://www.bmj.com/company/newsroom/new-study-shows-fewer-people-die-from-covid-19-in-better-vaccinated-communities/ (last visited April 27, 2023) ("The findings, based on data across 2,558 counties in 48 US states, show that counties with high vaccine coverage had a more than 80% reduction in death rates compared with largely unvaccinated counties.").

COVID-19 weighs against granting that defendant compassionate release."). Collectively, these three factors—the facility's ability to provide successful treatment for Gomez's health conditions, his vaccination status, and his prior record with COVID-19—illustrate that Gomez's risk from COVID-19 does not constitute an "extraordinary and compelling reason" warranting his release.

Nor does Gomez's argument regarding the conditions of confinement at FCI Fort Dix change this analysis. Gomez argues that these conditions, caused by the COVID-19 pandemic, have been more severe than typical incarceration in a variety of respects. (Mot. at 8-13.) Preliminarily, the court notes that the conditions at FCI Fort Dix have improved over time: current Bureau of Prisons statistics reflect zero current positive cases and an operational level of 1, the lowest level. *See BOP: COVID-19 Update,* Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Apr. 27, 2023); *see also Bradley,* 2023 WL 3004660, at *2 ("[S]ince Defendant filed his motion, the threat from COVID-19 has diminished nationwide and within the BOP.").[5] This court has nonetheless

---

[5] On Reply, Gomez raises several arguments best considered as Eighth Amendment challenges to the conditions of his confinement, including the adequacy of his medical treatment. (Reply at 4-13.) In his Motion, Gomez also mentions the pendency of one or several class action lawsuits against FCI Fort Dix addressing conditions of confinement, a suit in which these types of claims are better suited. (Mot. at 11); *see also Bradley,* 2023 WL 3004660, at *3 ("Defendant has made no showing that this litigation [regarding FCI Fort Dix] presents an 'extraordinary or compelling' reason justifying his immediate release. As other courts have noted, the litigation remains ongoing, and 'the State of New Jersey's lawsuit at this stage is still an allegation that has not been proven.'"). Relevant to the instant motion, Gomez's claims of inadequate healthcare or deliberate indifference are premised entirely on his claims that his medical records have been falsified by prison medical staff, and the treatment documented therein did not occur. The court "need not accept the[se] uncorroborated statements . . . at

previously acknowledged the conditions of confinement during COVID-19 and, where necessary, adjusted sentences to account for the "more punishing" results of such problems even after the issues have abated. *See, e.g., United States v. Nelson*, No. 10-CR-820 (NGG), 2022 WL 1469465, at *5 (E.D.N.Y. May 10, 2022). But unlike in other cases brought before this court, Gomez was sentenced *during*, not prior to, the COVID-19 pandemic, and the issues regarding the conditions of confinement were raised in two separate motions and again at sentencing. (*See* Mot. for Bond; Emergency Mot. for Bond and Release from Custody; Dec. 2, 2021 Sent. Tr. (Dkt. 114).) Plainly, the more severe conditions of confinement were already taken into consideration when crafting Gomez's sentence, and this court[6] will not revisit that determination.

### 3.   Section 3553(a) Factors

As the court has already concluded that Gomez has failed to show extraordinary and compelling reasons warranting a reduced sentence, it declines to reach whether the sentencing factors in 18 U.S.C. § 3553(a) weigh in favor of release.

### 4.   Supplemental Motion

Without addressing whether this motion is the proper vehicle to raise an argument regarding a purported error in sentencing calculations, the court concludes Gomez's argument is without merit. Gomez claims that the court erroneously considered him ineligible for the "safety valve" provision of 18 U.S.C. § 3553(f),

---

face value," *Samet v. United States*, 559 F. App'x 47, 49 (2d Cir. 2014) (Summary Order), and in light of the extensive contemporaneous documentation provided by both parties of Gomez's medical visits, will decline to do so.

[6] This case was originally assigned to Judge Sterling Johnson, Jr., who presided during the motions for bond and over sentencing. The case was reassigned to the undersigned on October 12, 2022. (*See* Oct. 12, 2022 Docket Entry.)

under which a qualifying non-violent defendant may be sentenced without consideration of a mandatory minimum if they meet five statutory criteria. But the Sentencing Transcript reflects nothing of the sort: Gomez's counsel informed the court that Gomez was eligible for safety valve relief without objection from the Government and argued for a downward variance, and the court made no reference to a mandatory minimum term of incarceration in sentencing Gomez.[7] (*See* Dec. 2, 2021 Sent. Tr. at 9, 16-17.)

### B. Motion to Appoint Counsel

There is no right to counsel on a motion for compassionate release. *See United States v. Hilliard*, No. 17-CR-35 (VB), 2021 WL 242538, at *2 n.1 (S.D.N.Y. Jan. 25, 2021). Instead, that decision is left to the court's discretion. *Id.* For the reasons stated above, Gomez's motion—his third raising identical arguments regarding his medical concerns and the conditions of confinement—has an "extremely slim" chance of success. *United States v. Piña*, No. 01-CR-619 (VM), 2021 WL 364192, at *1 (S.D.N.Y. Feb. 3, 2021). Accordingly, the court DENIES Gomez's motion to appoint counsel.

---

[7] The Government's sentencing submission and the PSR each noted that Gomez satisfied the statutory requirements for safety valve relief, as amended by the First Step Act, but did not satisfy the requirements provided by the Sentencing Guidelines in section 5C1.2. (*See* Gov't Sent. Mem. (Dkt. 73) at 3 & n.4; PSR at ¶ 17, p.19.) The court notes that the gap between the statutory and guidelines requirements has since been remedied by amendments which will take effect on November 1, 2023. *See* U.S.S.G. Amend. (Nov. 1, 2023) at 25-28.

## IV. CONCLUSION

For the aforementioned reasons, Gomez's motion for compassionate release is DENIED and Gomez's motion for the appointment of counsel is DENIED.

SO ORDERED.

Dated:      Brooklyn, New York
            May 17, 2023

                                        s/Nicholas G. Garaufis

                                        NICHOLAS G. GARAUFIS
                                        United States District Judge